IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INDIA WALKER,**  　　　　　**Plaintiff,** | **CIVIL ACTION** |
| v. | |
| **LINDY PROPERTY MANAGEMENT COMPANY,**  　　　　　**Defendant.** | **NO.  20-2371** |

## MEMORANDUM OPINION

Plaintiff India Walker, a black Muslim woman, has sued her former employer, Defendant Lindy Property Management Company ("Lindy Property"), alleging that while she worked as a housekeeper for Lindy Property, its employees made sexually harassing comments as well as derogatory comments about her race and religion.  When she complained to Lindy Property's management and filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), Lindy Property reduced her hours and constructively discharged her.

She asserts discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.S. § 951 *et seq.*, on the basis of race (Counts I and II) and religion (Counts III and IV), hostile work environment premised on sexual harassment (Counts V and VI), *quid pro quo* sexual harassment (Counts VII and VIII), and retaliation (Counts IX and X).  Walker also alleges that Lindy Property failed to adequately compensate her for her work, and accordingly asserts claims for breach of contract (Count XI), failure to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") (Count XII), and failure to pay wages in violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa.S. §§ 260.1 *et seq.* ("WPCL") (Count

XIII), and the Pennsylvania Minimum Wage Act, 43 Pa.S. § 333.101 *et seq.* ("PMWA") (Count XIV).  Lindy Property moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Walker's complaint.[1]  For the reasons set forth below, the motion will be granted in part and denied in part.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In November 2016, Walker began working as a housekeeping vendor at Lindy Property's location at York North Apartments in Philadelphia.  For the first six months Walker was employed, contracted, and paid by Clean It USA, a staffing agency; thereafter she worked directly and exclusively for Lindy Property 6 days a week for an approximate 60 hours per week but was on call 24/7 for maintenance and emergencies having been informed by a Lindy Property manager that if she could not be on round-the-clock call she could not work for the company.

Although she set up an LLC which she called "Two Hands Two Clean" "specifically for the purposes of working for [Lindy Property]," checks from Lindy Property were made "payable to India Walker," not Two Hands Two Clean.  But, Lindy Property did not withhold money for taxes from Walker's paycheck, nor pay Walker for overtime.  On one occasion when she asked Lindy Property if Two Hands Two Clean could hire someone to assist her, it denied her request.

In January 2017, Thomas "LNU," a leasing manager, began to make sexually harassing

---

[1] Lindy Property also moves for dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), contending that Walker was an independent contractor, not an employee, and therefore lacks statutory standing to bring suit. Because "[s]tatutory standing goes to whether Congress has accorded a particular plaintiff the right to sue under a statute, but . . . does not limit the power of the court to adjudicate the case," a motion to dismiss for lack of statutory standing "is brought pursuant to Rule 12(b)(6), rather than Rule 12(b)(1)." *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (citations omitted); *see also Wallach v. Eaton Corp.*, 837 F.3d 356, 364 n.9 (3d Cir. 2016) (characterizing "entertaining [a] statutory standing challenge as a 12(b)(1) Article III challenge" as "procedural error").  Accordingly, Lindy Property's Rule 12(b)(1) arguments will be evaluated under the Rule 12(b)(6) rubric.

comments to Walker on a daily basis, such as "Ooh, look at that ass."  He told her that she could not complain about sexual harassment because she was not a real employee.  Nevertheless, in February 2017, she did complain to Julia Malak, a white woman who was a property manager, about the sexual harassment.  Malak told Walker that no one would do anything about her complaints because she was "just a black girl from a crack head."  Afterwards, Malak continued to make racially discriminatory comments to Walker, such as "[y]ou're just a little black girl," and "[o]h you look like a crack head today."

Walker had a contract with Lindy Property, but the contract ended in September 2017.  Walker and Malak verbally agreed that Walker would continue to work at York North Apartments, and that Walker would receive $3,100 per invoice.  When Malak paid less than that amount—only $2,800 per invoice—and Walker inquired about the missing money, Malak told her to accept the reduced amount or she would receive nothing.  Malak began to make sexually harassing comments to Walker, including that "[t]he whole building just fucks each other, so it isn't a big deal if you fuck someone."  Malak also stated to Walker, "[i]f you need money or work, I won't ask for much but, you'll have to do something for me to borrow money."  Walker understood this comment to be a *quid pro quo* offer.  Though Walker rejected Malak's sexual advances, Malak continued to make sexually inappropriate comments.

In April 2018, Malak informed Walker that she could no longer wear her religious head covering because she looked "like a crack head."  Shortly thereafter, Walker sent an e-mail to Adam Levitt, a district manager, to complain about Malak's conduct.  Levitt informed Walker that he would come to the office to speak with her about her complaint.  But, when Walker arrived at the office the next day, Malak was waiting for her, not Levitt.  Malak laughed at Walker for trying to complain to Levitt, and threatened to terminate her employment.

Afterwards, Malak significantly decreased Walker's workload and, as a consequence, her pay. When Walker asked Malak about the decreased workload, Malak told Walker that she was assigning the work to other people.

On June 21, 2018, Walker filed a Charge of Discrimination against Lindy Property with the EEOC and PHRC alleging sexual harassment, discrimination on the basis of race and religion, and retaliation (the "First Charge"). Several months later, Thomas told Walker her filing made her a "snitch" and that he had instructed all other employees to stop communicating with her. Separately, Jean "LNU", a leasing agent, informed Walker that she had heard that Lindy Property wanted to terminate Walker because of the EEOC charge. Walker alleges that she was constructively discharged from Lindy Property as of November 30, 2018, and, in a second Charge of Discrimination filed with the EEOC and PHRC on July 10, 2019 (the "Second Charge"), attributes her discharge to retaliation for the first.

Although the face of the EEOC's notice to sue letter for the First Charge states that it was mailed on September 18, 2019, Walker alleges that neither she nor her counsel received it. They did, however, receive a notice to sue regarding the Second Charge and filed suit thereafter.

## II.     LEGAL STANDARD AND BRIEFING REQUIREMENTS

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). All factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014) (citation omitted).

In responding to a motion a party is required to file a brief which addresses arguments

made by the moving party in the absence of which "[a] motion may be granted as uncontested." E.D.Pa. Local Rule of Civil Procedure 7.1(c); *Bordoni v. Chase Home Fin. LLC*, 374 F.Supp.3d 378, 384 (E.D. Pa. 2019) ("[f]ailure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed" (internal quotation marks and citations omitted)); *Celestial Cty. Dev. Corp. v. City of Phila.*, 901 F.Supp.2d 566, 578 (E.D. Pa. 2012) ("plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested" (citations omitted)); *Dennis v. DeJong*, 867 F.Supp.2d 588, 622 (E.D. Pa. 2011) ("failing to address substantive matters raised in a motion may result in the unaddressed issue being granted as uncontested"); *Ankele v. Hambrick*, 286 F.Supp.2d 485, 496 (E.D. Pa. 2003) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it").

As a preliminary matter, Plaintiff has failed to respond to arguments made by Defendant in support of its motion to dismiss her breach of contract, FLSA, WPCL and PMWA claims. Accordingly, each of these claims shall be dismissed. Further, she does not respond to Defendant's argument that her retaliation claim premised on a constructive discharge theory is not viable so she is precluded from proceeding on that theory.[2]

### III. DISCUSSION

#### A. Walker's Title VII Claims Cannot Be Dismissed as Untimely

With respect to the remaining claims, the question of whether they should be dismissed is complicated by Plaintiff's allegations that although on June 21, 2018, she filed a timely Charge with the EEOC neither she nor her counsel received a copy of the Notice of Rights. The parties

---

[2] Defendant does not, however, make an argument to dismiss Plaintiff's Title VII and the PHRA retaliation claims premised on the reduction of Plaintiff's hours following her complaint to Lindy Property's management. Her retaliation claim shall, accordingly, survive only to the extent that it is based on this theory.

5

do not disagree that the EEOC did issue a Notice concerning the First Charge—Plaintiff simply alleges she did not get it from the EEOC in a timely manner.  Defendant argues that she must be presumed to have received the Notice and, given that, argues that any claims she now makes that are premised on the First Charge are time-barred because she filed suit longer than 90 days after she is presumed to have received notice of her right to sue.

      Title VII provides that if EEOC dismisses a charge or fails to take action on a charge within a period of time, EEOC "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought." 42 U.S.C. § 2000e–5(f)(1).  Ordinarily, "[t]he receipt of the [EEOC] right-to-sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in court under Title VII." *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001) (citation omitted).  Generally, "the time for the filing of a complaint begins to run when the plaintiff has notice of the EEOC's decision, which usually occurs on the date he receives a right-to-sue letter from the agency." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999) (citation omitted).  Accordingly, where a defendant contends that a plaintiff's Title VII claims were untimely filed, "the date on which [the plaintiff] received the letter becomes critical." *Id.*

      However, on this motion to dismiss where the allegations of the Complaint are that Plaintiff dual-filed a Charge of Discrimination with the EEOC alleging sexual harassment, race and religious discrimination, and retaliation against Defendant on June 21, 2018, and that a Charge Number was assigned to the case, but that neither Plaintiff nor Plaintiff's counsel received a copy of the Notice of Rights related to that charge, the presumption that she received the right to sue letter is shaken.  While discovery might yield more information as to what happened to the Notice and why the Plaintiff did not receive it, taking the allegations here as

true, it is assumed that Walker never received it.  Thus dismissal of any claims premised on the First Charge cannot be dismissed as time-barred on the basis that Walker failed to bring suit within 90 days of receiving the Notice.  *See Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 252 (3d Cir. 1986) ("the time for filing a complaint begins to run when the plaintiff has notice of the EEOC decision"); *see also Lafate v. Hosp. Billing & Collections Serv., Ltd.*, 2004 WL 1960218, at *1 (D. Del. Sept. 1, 2004) (accepting as true complaint's allegations that EEOC notice was never received and therefore denying motion to dismiss Title VII claims as time-barred); *Khazzaka v. Univ. of Scranton*, 2001 WL 1262320, at *2 (M.D. Pa. Oct. 22, 2001) (same); *cf. Dempsey-Lowden v. Levittown-Fairless Hills Rescue Squad, Inc.*, 2018 WL 398296, at *4 (E.D. Pa. Jan. 11, 2018) (in ADA context, granting summary judgment and dismissing claims as untimely where plaintiff failed to rebut presumption that she received EEOC notice).

### B.  Walker Alleges Facts Adequate to Establish that She was an Employee

Much of Defendant's briefing is concerned with the question of whether Plaintiff was an employee of or an independent contractor to Lindy Property.  It argues that her Complaint insufficiently alleges facts to establish an employer/employee relationship and that she was an independent contractor without standing to bring each of her Title VII and PHRA claims all of which, accordingly, must be dismissed.

In support of its contention that Walker was an independent contractor, Lindy Property attaches multiple exhibits to its motion to dismiss, including a declaration of a Lindy Property Human Resources Director and invoices from Walker to Lindy Property.  These extraneous exhibits cannot be considered here.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings" (citation omitted)); *see also Davis v. Wells*

7

*Fargo*, 824 F.3d 333, 351 (3d Cir. 2016) ("ignoring the facts set out in [defendant's] declaration" attached to motion to dismiss); *Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Const. Co.*, 618 F. App'x 246, 255 (6th Cir. 2015) (district court properly rejected consideration of extraneous invoices attached to motion to dismiss); *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F.Supp.3d 449, 461 (D.N.J. 2020) (rejecting consideration of extraneous letter attached to motion to dismiss where letter was not specifically referred to in complaint); *Foglia v. Renal Ventures Manangement, LLC*, 2015 WL 1104425, at *6-*7 (D.N.J. Mar. 11, 2015) (rejecting consideration of billing records attached to defendant's motion to dismiss); *Myers v. Garfield & Johnson Enterprises, Inc.*, 679 F.Supp.2d 598, 603 (E.D. Pa. 2010) (in Title VII case in which defendant disputed that it employed plaintiff, rejecting consideration of tax and other forms prepared in connection with plaintiff's employment that were attached to motion to dismiss). Defendant's arguments that Plaintiff is not an employee will be evaluated by looking to the allegations in the Complaint and in the EEOC Charges.

"In order to state a Title VII claim, [a plaintiff] must allege an employment relationship with the defendants." *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 119 (3d Cir. 2013).[3] Though "Title VII protects workers who are 'employees,' [it] does not protect independent contractors." *Holtzman v. The World Book Co.*, 174 F.Supp.2d 251, 253 (E.D. Pa. 2001) (citation omitted).[4] Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). "[T]he question of whether an individual is an employee turns on 'the hiring party's right to control the manner and means by which the product is

---

[3] Because "[c]laims under the PHRA are interpreted coextensively with Title VII claims," *Atkinson v. LaFayette College*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (citation omitted), Walker will have adequately alleged that she is an employee for purposes of the PHRA if she has adequately alleged that she is an employee for purposes of Title VII.

[4] Because analysis of employee status requires "careful factual inquiry," the issue "may generally require resolution at the summary judgment stage, rather than at the motion to dismiss stage." *Washington v. Client Network Servs. Inc.*, 590 F. App'x 126, 130 (3d Cir. 2014) (internal quotation marks and citations omitted).

8

accomplished.'" *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 180 (3d Cir. 2009) (quoting *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)). This evaluation considers the following non-exhaustive factors:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden*, 503 U.S. at 323-24 (internal quotation marks and citation omitted).

Here, Plaintiff alleges that Lindy Property misclassified her as an independent contractor, and, accordingly, did not withhold taxes from her paycheck. Although her allegations do not address some of the *Darden* factors including whether Lindy Property provided Walker with benefits; the level of skill required or the source of instrumentalities and tools for Walker's work at York North Apartments; or whether Lindy Property generally hires independent contractors or employs housekeepers directly, such that Walker's work was part of Lindy Property's regular business, it does contain allegations that suggest (at this motion to dismiss stage of the case) that Walker was an employee: The location of Walker's work for Lindy Property was at a location managed by Lindy Property. A Lindy Property employee exercised significant control over her employment by, for example, reducing her hours, and directing her to stop wearing her religious head covering. And, Walker had little discretion over when and for how long she worked. Rather, she worked exclusively and on round-the-clock call for Lindy Property. Although the Complaint does allege that Walker set up her own company, Two Hands Two Clean, and that Walker invoiced Lindy Property for the work she did, Lindy Property paid with checks made out to her, not to her company. And although Walker requested permission to hire an additional

9

employee for Two Hands Two Clean to assist her in the work she did for it, Lindy Property refused her request. The method of payment and Lindy Property's role in who Walker could hire thus also weigh in favor of her status as an employee.

Ultimately, Walker's allegations suffice to plausibly allege that Lindy Property had the "right to control the manner and means by which" she performed her job, and thus that she was a Lindy Property employee.[5]  *Brown*, 581 F.3d at 180 (internal quotation marks and citation omitted).

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion will be granted in part and denied in part. An appropriate order follows.

**January 29, 2020**                                                          **BY THE COURT:**

                                                                              **/s/Wendy Beetlestone, J.**

                                                                              _____

                                                                              **WENDY BEETLESTONE, J.**

---

[5] Lindy Property's arguments to the contrary do not disturb this conclusion. Lindy Property focuses on what the Complaint does *not* allege, but it is primarily what the complaint *does* allege that matters here. Lindy Property notes that Walker alleges that Thomas informed Walker that she was not a "real employee," but this is not dispositive, particularly because Walker also alleges that Thomas did so to discourage her from reporting sexual harassment to Lindy Property's management.